UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| NANCY MCINTYRE, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 1:17CV215 RLW |
| NANCY BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of Defendant's final decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons set forth below, the Court affirms the decision of the Commissioner.

## **I. Procedural History**

Plaintiff protectively filed an application for DIB on May 13, 2014. (Tr. 11, 122-23) Plaintiff alleged disability beginning March 1, 2013 due to back pain, hip pain, high blood pressure, anxiety, irregular heartbeat, and depression. (Tr. 68, 122) Plaintiff's claim was denied, and Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 65, 68-75) On September 6, 2016, Plaintiff testified at a hearing before the ALJ. (Tr. 24-54) In a decision dated November 30, 2016, the ALJ determined that Plaintiff had not been under a disability from March 1, 2013 through the date of the decision. (Tr. 11-20) On October 13, 2017, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3) Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the September 6, 2016 hearing, Plaintiff appeared with counsel. She testified that she had been unable to work since March 1, 2013, but she did work one day a week for five hours at the Southeast Missouri Disability Alliance, making $8.75 an hour. Plaintiff cared for a mentally disabled woman by cooking, cleaning, and driving her to the grocery store, doctor, and post office. Plaintiff was 58 years old at the time of the hearing. She completed the 11th grade and had no vocational training. Plaintiff owned a small pickup truck and was able to drive. (Tr. 29-31)

Plaintiff stated that she did not use any medical devices to relieve pain. She took ibuprofen and Tylenol. She had not been to the emergency room due to lack of insurance. Plaintiff testified that she could not afford the increased insurance rates so she did not renew her health insurance after it expired. Plaintiff had no hospital stays since March 2013, and she did not see a psychiatrist or psychologist. Her family doctor, Charles Pewitt, D.O., prescribed Lexapro. Plaintiff had not received injections for pain or attended physical therapy because she could not afford treatment. She saw Dr. Pewitt every six months. At Plaintiff's last visit, Dr. Pewitt ordered blood work for cholesterol and checked Plaintiff's blood pressure and heart. (Tr. 32-34)

Plaintiff further testified that she was unable to work due to pain. When she stood, her legs went numb. Plaintiff stated that she mentioned the pain to Dr. Pewitt, but he ignored her. The ALJ noted that Dr. Pewitt did not document any complaints of back pain or mental health symptoms in his notes from November 2014 to December 2015. Plaintiff responded that she did complain about back pain and was considering finding a new doctor to address her back problems. (Tr. 34-35)

2

Plaintiff's attorney also questioned Plaintiff regarding her pain. She testified that the top part of her back hurt when she stood up. After 10 to 15 minutes of standing, Plaintiff's leg would go numb, and her back would hurt. When Plaintiff worked, she was able to take breaks every 30 minutes during the five hour shift. Plaintiff stated that she needed to take breaks due to back pain that she had been dealing with for years. She did not believe she could work any more hours or days per week because of her pain. Plaintiff stated that she would hurt when she left her job. When she returned home, she sat in a recliner for about an hour and then started doing chores around her home. Plaintiff further testified that she experienced discomfort while sitting and that her right leg went numb. She was in pain during the hearing, and her right leg was asleep and felt like it had needles running up the leg. Plaintiff stated that resting in her recliner was most comfortable for her. (Tr. 35-38)

With respect to her back pain, Plaintiff testified that she had not received any treatment in the past three years. Plaintiff had been prescribed Lexapro which helped with her mental health. Plaintiff stated that she previously went to the emergency room with panic attacks, but not in the past three years. However, Plaintiff continued to experience panic attacks when she was around a lot of people or when she felt as if gloom and doom was about to happen. She talked to her sister on the phone to cope with her panic attacks. Her last attack was about a month prior when talking about her mother who had passed away. Plaintiff also took medication for high blood pressure. She checked her numbers at home, and her blood pressure ran high on days when she was in pain. (Tr. 38-41)

Plaintiff further testified that her past work included taking care of her mother through SEMO Alliance of Disability. Her mother had broken her neck and later her back, and Plaintiff

did everything for her mother, including lifting her, which Plaintiff estimated to be about 100 pounds. (Tr. 43-44)

The ALJ also questioned a vocational expert ("VE") regarding Plaintiff's ability to work. The VE noted that Plaintiff's past work was as a caregiver, listed as medium work and heavy work as performed by Plaintiff. The ALJ then asked the VE to assume a hypothetical individual of Plaintiff's age, 58 years old, with an 11th grade education and the same past work as Plaintiff. The person could perform the exertional demands of work but had nonexertional limitations. These limitations included no climbing ladders, ropes, or scaffolds; frequent stooping, kneeling, crouching, crawling, and climbing ramps and stairs; no concentrated exposure to pulmonary irritants; and avoiding hazards of dangerous unprotected heights and machinery. The individual could understand, remember, and carry out tasks and instructions; could use judgment in making work-related decisions; could interact appropriately with co-workers and supervisors; and could respond appropriately to changes in routine in a normal work setting. Given these limitations, the VE testified that the individual could perform Plaintiff's past work as a caregiver. In addition, the individual could work as a warehouse worker, housekeeper, and telemarketer. (Tr. 41-47)

If the ALJ reduced the exertional level to medium, the individual could work as a warehouse worker, hand packager, and hospital housekeeper. The VE also testified that at the light exertional level, the available jobs would be hospital housekeeper, laundry aide, and mail sorter. (Tr. 47-48)

Plaintiff's attorney also questioned the VE, adding the limitation of needing a 5 minute break every 30 minutes while working at the light or medium levels. The VE responded that that limitation would preclude work. If the hypothetical eliminated the break limitation but added the

need to be absent two days per month due to physical health symptoms, all employment would also be eliminated. (Tr. 48)

The VE stated that the testimony was consistent with the Dictionary of Occupational Titles ("DOT") and with the VE's education and experience. At the end of the hearing, the ALJ noted that he was keeping the record open for 30 days to allow Plaintiff to submit recent medical records from Dr. Pewitt or any other doctors. (Tr. 48-54)

In a Function Report – Adult, Plaintiff stated that she experienced panic attacks that could last up to an hour. Pain in her upper back prevented her from stooping, bending, picking up heavy objects, and sitting for long periods of time. The pain was so severe at times that it made her cry. During the day, Plaintiff cleaned the house, read, and fixed dinner. She cared for her husband and son by cooking and doing laundry. Back pain affected her sleep. Plaintiff reported that she prepared sandwiches weekly and was able to perform cleaning and laundry. However, laundry sometimes took an entire day to complete. She did not perform yard work. Plaintiff went outside once a day and was able to shop for groceries twice a month for a couple hours. Plaintiff enjoyed reading but she could not read for long periods due to pain in her back and shoulder. She also spent time with others and went to church. Plaintiff reported that her impairments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, complete tasks, concentrate, and get along with others because she experienced constant back pain. She stated that she could walk ¼ block before needing to rest for 5 minutes and pay attention for 15 minutes. Plaintiff was unable to follow written or spoken instructions, but she could get along with authority figures. She could not handle stress well and hated changes. (Tr. 159-66)

### III. Medical Evidence

Plaintiff was treated by Charles Pewitt, D.O., between 2012 and 2014. On June 14, 2012, Plaintiff was doing well overall with no problems reported. Dr. Pewitt diagnosed hypertension and hyperlipidemia and advised Plaintiff to return in 6 months. Plaintiff returned on December 14, 2012 with complaints of intermittent ear pain with drainage. Dr. Pewitt assessed right otitis externa and prescribed ear drops. On May 9, 2013, Plaintiff reported doing relatively well overall with blood pressure controlled. She reported no new problems. Dr. Pewitt continued her medications which included Livalo, Lotensin, Toprol, Lexapro, and Xanax. Plaintiff was not at risk of falling. Plaintiff did not show up for her August 30, 2013 appointment. On November 14, 2013, Plaintiff reported doing well with some sinus congestion. On May 14, 2014, Plaintiff complained of seasonal allergies and requested an allergy shot. She reported that her blood pressure was controlled. Dr. Pewitt administered a Depo Medrol injection. (Tr. 197-201)

On October 20, 2014, Plaintiff underwent x-rays of her cervical spine and lumbar spine. The cervical spine exam revealed trace degenerative disc disease at the C5-6 level. The lumbar spine exam showed degenerative disc disease at the L5-S1 level; lower lumbar spine facet joint degenerative arthritis; and grade 1 anterolisthesis of L5 on S1 measuring 4 mm. (Tr. 209-10)

Also on October 20, 2014, Matthew Karshner, M.D., performed a consultative examination of Plaintiff. Plaintiff reported being unable to work due to low back pain stemming from a car accident many years ago. The pain was non-radiating and worsened with standing, bending, lifting, and walking. The pain improved slightly with Tylenol. Plaintiff also reported some numbness on the anterior right thigh. She was able to drive and take care of herself. Physical exam revealed that Plaintiff was able to walk and bend forward to pick up her shoes. She had full strength in both upper and lower extremities. She could walk on heels, tiptoes, as

well as tandem walk, hop, squat, and return from a squatting position with no complaints of pain or shortness of breath. Examination of the back revealed positive Waddell's signs in the low back and shoulders. She had decreased internal hip rotation but normal sensation in the thighs. Dr. Karshner assessed degenerative disc and joint disease in the lumber spine and obesity. Dr. Karshner opined that Plaintiff demonstrated an ability to perform and sustain work-related functions including sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling at the sedentary level. (Tr. 212-17)

Plaintiff returned to Dr. Pewitt on November 12, 2014. She had not been taking her Livalo. Plaintiff also complained of allergies and requested a steroid injection. Dr. Pewitt restarted Livalo and administered Depo Medrol. During a follow up visit with Dr. Pewitt, Plaintiff complained of a cyst on her uterus. She also reported stable blood pressure and occasional nonspecific palpitation. She stopped taking her cholesterol medication. Dr. Pewitt assessed hypertension, type 2 hyperlipidemia, seasonal rhinitis, and uterine cyst. He administered a Depo Medrol injection in Plaintiff's right hip and referred Plaintiff to an OB/GYN. On December 21, 2015, Plaintiff reported doing well other than allergies. Dr. Pewitt administered a Depo Medrol injection in Plaintiff's right hip and a flu shot. Her medications were Lexapro, Toprol XL, Lotensin, and Xanax. On August 17, 2016, Dr. Pewitt refilled Plaintiff's medications, including Livalo. Plaintiff was doing well otherwise. Diagnoses were hypertension and hyperlipidemia. (Tr. 220-22, 226)

### IV. The ALJ's Determination

In a decision dated November 30, 2016, the ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. She had not engaged in substantial gainful activity since the alleged onset date of March 1, 2013. The ALJ further

found that Plaintiff had the severe impairments of degenerative disc and joint disease of the spine, hypertension, and obesity. However, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Plaintiff's seasonal rhinitis and anxiety were nonsevere. (Tr. 11-14)

After careful consideration of the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to lift/carry 25 pounds frequently and 50 pounds occasionally; and sit, stand, and walk for 6 hours each in an 8-hour workday. Plaintiff was unable to climb ladders, ropes or scaffolds. She could frequently stoop, kneel, crouch, crawl, and climb ramps and stairs. Plaintiff could have no concentrated exposure to pulmonary irritants or extreme heat, cold, or humidity. Further, Plaintiff needed to avoid hazards of dangerous unprotected heights and machinery. She could understand, remember, and carry out tasks and instructions commensurate with her educational and vocational past relevant work background. Plaintiff was not limited to unskilled work. In addition, she was able to use judgment in making commensurate work-related decisions; could interact appropriately with the general public, co-workers, and supervisors; and could respond appropriately to changes in routine in a normal work environment. The ALJ determined that Plaintiff was capable of performing her past relevant work as a caregiver. Alternatively, Plaintiff was able to perform a number of other jobs existing in significant numbers in the national economy. Such jobs included warehouse worker, hand packer, hospital housekeeper, housekeeper, telemarketer, laundry aide, and mail sorter. Thus, the ALJ concluded that Plaintiff had not been under a disability from March 1, 2013 through the date of the decision. (Tr. 14-20)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. The Social Security Act defines disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that she has a severe physical or mental impairment or combination of impairments which meets the duration requirement; or (3) she has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) she is unable to return to her past relevant work; and (5) her impairments prevent her from doing any other work. *Id.*

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal quotations omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment. *Johnson v. Chater*, 108 F.3d 942, 944 (8th Cir. 1997) (citations and internal quotations omitted).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. *Id.*

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the *Polaski*[1] factors and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted). If inconsistencies in

---

[1] The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" *Buckner*, 646 F.3d at 558 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. *Marciniak*, 49 F.3d at 1354.

## VI. Discussion

In her Brief in Support of the Complaint, Plaintiff claims that the ALJ erred in finding an RFC that was not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ gave little weight to the consultative examiner's opinion and instead relied upon the ALJ's own inferences when assessing Plaintiff's RFC. Plaintiff asserts that the Court should reverse the Commissioners determination or, alternatively, remand the matter for a new hearing before an ALJ. Defendant responds that the ALJ fully considered the record and incorporated the limitations that were supported by the evidence on the record as a whole in determining Plaintiff's RFC. Thus, the Defendant asserts that the Court should affirm the Commissioner's decision.

RFC is defined as the most that a claimant can still do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [his] limitations.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Because "'[t]he ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC.'" *Martise*, 641 F.3d at 923 (quoting *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th

Cir.2010)). "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen*, 612 F.3d at 1016; *Martise*, 641 F.3d at 923.

The record shows that the ALJ properly considered the medical evidence and based the RFC determination on all of the evidence contained in the record. "'Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.'" *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (quoting *Cox v. Astrue*, 495 F.3d 614, 619-20)). The ALJ found that Plaintiff had the RFC to perform medium work with additional limitations. However, Plaintiff contends that the ALJ gave little weight to the opinion of the Dr. Karshner, the consultative examiner, who opined that Plaintiff was only capable of sedentary work. Thus, Plaintiff argues that substantial evidence does not support the ALJ's findings.

The Court first notes that the ALJ only gave little weight to Dr. Karshner's ultimate opinion, not the clinical and objective observations made during the examination. (Tr. 16-17) "The ALJ is not required to accept every opinion given by a consultative examiner, however, but must weigh all the evidence in the record." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). The ALJ may reject the opinion of a consultative physician where the opinions are internally inconsistent. *Perks*, 687 F.3d at 1092. In addition, "[w]hether a claimant can work sedentary work is a question for a vocational expert, not a medical source." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (citation omitted).

Here, the ALJ found that the examination findings did not support a limitation to sedentary work. (Tr. 17) The ALJ noted a lack of back pain complaints in the medical record, little to no limitation in her range of motion, only mild findings in objective studies, and positive

12

Waddell's signs which indicated exaggerated symptoms.[2] The ALJ further noted that the medical record showed that Plaintiff's back and hip pain were managed with conservative treatment, and she did not seek evaluation from an orthopedist, neurologist, or pain management specialist. (Tr. 17) Objective studies showed only mild findings. (*Id.*) In addition to the lack of treatment, Plaintiff's pain was managed with over the counter pain medication. (*Id.*) "'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'" *Brown v. Astrue,* 611 F.3d 941, 955 (8th Cir. 2010) (quoting *Brace v. Astrue,* 578 F.3d 882, 885 (8th Cir. 2009)).

Further, the ALJ noted that Plaintiff engaged in a wide range of daily activities, including cleaning the house, fixing dinner, doing laundry, driving a car, shopping, handling money, attending church regularly, caring for herself, and working as a caregiver. (Tr. 15-16) "Evidence of daily activities that are inconsistent with allegations of disabling pain may be considered in judging the credibility of such complaints." *Reece v. Colvin,* 834 F.3d 904, 910 (8th Cir. 2016); *see also Wright v. Colvin,* 789 F.3d 847, 854 (8th Cir. 2015) (noting the Eighth Circuit has found activities such as driving, shopping, bathing, and cooking were inconsistent with disabling pain). In addition, the record shows that Plaintiff did not complain about or seek treatment for her back pain during visits with her treating physician, Dr. Pewitt. Failure to seek medical treatment for her alleged pain contradicts Plaintiff's subjective complaints of disabling impairments and supports the ALJ's finding of no disability. *Miliam v. Colvin,* 794 F.3d 978, 985 (8th Cir. 2015) (citation omitted).

---

[2] "[P]hysicians use Waddell tests to detect nonorganic sources, such as psychological conditions or malingering, for lower back pain." *Reinertson v. Barnhart,* 127 F. App'x 285, 289 (9th Cir. 2005).

13

Based on the medical evidence and other evidence in the record, the ALJ properly discounted Dr. Karshner's opinion regarding a sedentary work limitation. Further, the ALJ properly found that the medical evidence in the record and Dr. Karshner's clinical and objective findings supported an RFC determination that Plaintiff could perform a reduced range of medium work with postural and other limitations. The medical evidence shows that Plaintiff had normal muscle tone and mass, full muscle strength in both the upper and lower extremities, and could walk on heels, tiptoes, as well as tandem walk, hop, squat, and return from a squatting position with no complaints of pain. (Tr. 214-15) These findings by Dr. Karshner support the ALJ's conclusion that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently. *See Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (finding substantial evidence supported the ALJ's findings regarding plaintiff's lifting abilities where treatment notes showed normal muscle strength). While Plaintiff also argues that the ALJ failed to account for her obesity, the RFC finding includes limitations to climbing ladders, ropes or scaffolds. *See Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004) (finding the ALJ properly considered plaintiff's obesity where the ALJ referred to obesity in evaluating the claim and took that condition into account when denying benefits).

Further, the ALJ relied on the VE's testimony to determine that Plaintiff could perform her past relevant work as a caregiver, as it is generally performed. "An ALJ may rely on a vocational expert's testimony as long as some of the identified jobs satisfy the claimant's residual functional capacity." *Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014). Here, based on the hypothetical provided by the ALJ incorporating Plaintiff's RFC, the ALJ properly relied on the VE's testimony to determine Plaintiff could perform her past relevant work. In addition, the VE also testified that other jobs existed in the national economy which Plaintiff could perform. The

14

Court finds that the ALJ did not err in relying on the VE. Thus, the Court concludes that substantial evidence supports the ALJ's RFC determination. *See Cypress v. Colvin*, 807 F.3d 948, 951 (8th Cir. 2015) (finding the ALJ's determination of plaintiff's RFC was supported by substantial evidence where there were no medically determinable impairments to support the level of pain alleged by plaintiff, treating physicians consistently noted normal strength, MRI tests showed only mild osteoarthritis, and medication controlled the plaintiff's pain).

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits is **AFFIRMED**. An appropriate Judgment shall accompany this Memorandum and Order.

Dated this 19th day of March, 2019.

                                                                                    *Ronnie L. White*
                                                                                    **RONNIE L. WHITE**
                                                                                    **UNITED STATES DISTRICT JUDGE**